UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ELLE NGUYEN, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MERCER ISLAND BOYS BASKETBALL BOOSTER CLUB, *et al.*, <br><br> Defendants. | CASE NO. 2:23-cv-00855-RSL <br><br> ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMMON LAW CLAIMS |

This matter comes before the Court on "Defendants Boys and Girls Club of King County and [Defendant] Marc Munson's CR 12(b)(6) Motion to Dismiss." Dkt. # 17. Plaintiffs filed this lawsuit on June 6, 2023, alleging that the moving defendants (1) breached a contractual promise to not tolerate discrimination or harassment and breached contractual provisions regarding termination of participation in a sports program; (2) negligently failed to address discrimination or harassment, unfairly terminated their team participation, failed to grant transfers to another sports team, and called the police to have plaintiffs removed from the premises; (3) intentionally inflicted emotional distress on plaintiffs; (4) negligently inflicted emotional distress on plaintiffs; and (5) engaged in race-

based discrimination in violation of federal and state law. Defendants seek dismissal of the four common law claims.

The question for the Court on a motion to dismiss is whether the facts alleged in the complaint sufficiently state a "plausible" ground for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In the context of a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted). The Court's review is generally limited to the contents of the complaint. *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). "We are not, however, required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). ). A district court may also "consider certain materials — documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice — without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

> To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." []*Twombly*, 550 U.S. [at 570]. A plausible claim includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *U.S. v. Corinthian Colls.*, 655 F.3d 984,

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS PLAINTIFFS' COMMON LAW CLAIMS - 2

991 (9th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).
Under the pleading standards of Rule 8(a)(2), a party must make a "short and
plain statement of the claim showing that the pleader is entitled to relief."
Fed. R. Civ. P. 8(a)(2). . . . A complaint "that offers 'labels and conclusions'
or 'a formulaic recitation of the elements of a cause of action will not do.'"
*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Thus,
"conclusory allegations of law and unwarranted inferences are insufficient to
defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th
Cir. 2004).

*Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1144–45 (9th Cir. 2021). If the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim, dismissal is appropriate. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

Having reviewed the Complaint, the memoranda submitted by the parties, and Exhibits A and B to the Declaration of Ellie Hooman,[1] and construing the allegations in the light most favorable to plaintiffs, the Court finds as follows:

## BACKGROUND

In order for plaintiffs G.A., age 12, and A.A., age 11, to participate in the Greater Eastside Football Junior Association League, plaintiff Elle Nguyen, their mother, signed the Mercer Island Boys & Girls Club of King County ("BGCKC") Code of Conduct on August 9, 2022. Dkt. # 1 at ¶ 3.1. A.A. was chosen to play on a team coached by defendant

---

[1] Plaintiffs' request to strike the emails attached as Exhibits C and D to the Hooman declaration is GRANTED. Plaintiffs do not mention the emails in the Complaint, nor do they form the basis for any of the claims asserted. In fact, plaintiffs' breach of contract claim is based in part on the absence of such communications. *See* Dkt. # 1 at ¶¶ 4.1.b.8.c. and d. If defendants intend to dispute the allegations of the complaint, they must do so in the context of a motion for summary judgment, not a motion to dismiss.

This matter can be decided on the papers submitted. Defendants' request for oral argument is DENIED.

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS PLAINTIFFS' COMMON LAW CLAIMS - 3

Marc Munson, but he alleges that he was bullied, subjected to racial slurs, and/or physically assaulted by his teammates and Mr. Munson. *Id.* at ¶¶ 3.2 and 4.1.b.3. On August 12, 2022, A.A. quit the team, and he and his mother met with employees of BGCKC to discuss A.A.'s experiences on the team (including bullying/racial slurs, physical violence, and the perceived bias or nepotism of Mr. Munson) and to request a transfer so that he could play in another youth league. *Id.*

Meanwhile, G.A. continued to play with the BGCKC team until October 26, 2023, when the organization terminated his participation. *Id.* at ¶¶ 3.4 and 3.13. The next day, Ms. Nguyen discovered that five Caucasian participants in the BGCKC youth team had lied about their addresses and yet were permitted to remain on the team for the rest of the season. *Id.* at ¶ 3.14. When G.A. appeared at practice "to show support to his teammates," he was removed from the park by a BGCKC employee. *Id.*

On October 29, 2023, the parents of G.A.'s former teammates unsuccessfully lobbied BGCKC to keep G.A. on the team for the last two games of the season. When their efforts failed, the former teammates staged a show of support for G.A. at Mercer Island High School. Ms. Nguyen and A.A. were at Mercer Island High School for an Eastlake-Sammamish football game. BGCKC asserted that it had rented the property for the day, did not want Ms. Nguyen and her son on the premises, and called the police to have them removed. *Id.* at ¶ 3.15. The same thing happened at another sporting event on November 5, 2022. *Id.* at ¶ 3.16. On November 12, 2022, a BGCKC employee requested that the police

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS PLAINTIFFS' COMMON LAW CLAIMS - 4

remove plaintiffs from Pop Keeney Stadium in Bothell, Washington, but the police declined. *Id.* at ¶ 3.18.

As a result of defendants' actions, A.A. has experienced stress and general malaise for which he sought medical attention. *Id.* at ¶ 3.19. He has also lost weight. *Id.* at ¶ 3.20. All three plaintiffs have experienced severe emotional distress and suicidal ideation as a result of A.A.'s and G.A.'s removal from BGCKC. Also as a result of defendants' actions, A.A. and G.A. have missed school on multiple occasions and are seeing a therapist. *Id.* at ¶ 3.22.

<center>DISCUSSION</center>

**A. Breach of Contract**

    **1. Marc Munson**

Plaintiffs assert that Mr. Munson, as an agent of BGCKC, had a contractual duty to enforce BGCKC's Family Handbook and to ensure that discrimination and harassment were not tolerated. Dkt. # 30 at 8. To establish a breach of contract claim, plaintiffs must show that there was an agreement between the parties, *i.e.*, a "meeting of the minds" on the essential terms of the agreement. *Sea–Van Investments Assoc. v. Hamilton*, 125 Wn.2d 120, 125–26 (1994). Plaintiffs argue only that Mr. Munson, as a volunteer coach in the BGCKC junior football program, should have enforced the Family Handbook. Whatever duty Mr. Munson may have had with regards to the Family Handbook, it was not a contractual duty negotiated with or owing to plaintiffs. Plaintiffs do not allege that they had any sort of understanding with Mr. Munson, much less an agreement that he would

enforce BGCKC's documents. The contract claim against Mr. Munson fails for lack of an agreement.

## 2. BGCKC

With regards to BGCKC, plaintiffs rely on BGCKC's Code of Conduct and Family Handbook as the sources of the contractual obligations at issue. Plaintiffs allege (a) that Ms. Nguyen signed the Code of Conduct on August 9, 2022,[2] and (b) that BGCKC promised through its Family Handbook that it would not tolerate discrimination and harassment and that it would suspend or remove a player from the program only for specified reasons. Dkt. # 1 at ¶¶ 3.1 and 4.1.b. Plaintiffs allege that they performed under the contracts by paying all necessary fees, complying with the Code of Conduct and Family Handbook, and being selected as members of the team, whereupon BGCKC had a duty to let A.A. and G.A. play and a duty to stop the bullying and discrimination A.A. experienced. Plaintiffs allege that BGCKC breached both duties.

The Code of Conduct contains a series of pledges a parent is required to make before his or her child will be permitted to participate in BGCKC's youth football program. Dkt. # 18-2. Violations of the Code of Conduct make a parent and/or her child subject to disciplinary action, but the document imposes no obligations on BGCKC. In the absence of any contractual duty, the Code of Conduct cannot serve as the basis for a breach of contract claim.

---

[2] The Code of Conduct in the record is dated August 2, 2022. Dkt. # 18-2.

The Family Handbook is an informational and policy document pertaining to Boys & Girls Club of King County's preschool, elementary, teen, athletic, and summer programs. Dkt. # 18-1 at 2. Plaintiffs do not allege that they were asked to agree to or sign the Handbook, that they saw and relied upon the information contained therein when they decided to participate in the Greater Eastside Football Junior Association League, or that the parties intended to be legally bound by its terms or to incorporate its terms into some other agreement. The allegations of the Complaint support no other conclusion than that the Handbook is a general statement of the club's policies that did not involve or require a meeting of the parties' minds. Plaintiffs' breach of contract claims fail as a matter of law.

**B. Intentional Infliction of Emotional Distress**

In Washington, "[t]he tort of outrage requires the proof of three elements: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress." *Kloepfel v. Bokor*, 149 Wn.2d 192, 195 (2003) (citations omitted). Most of the wrongs at issue here – choosing one child over another as quarterback, levying sanctions in response to a parent's social media post targeting a volunteer coach, and failing to grant a transfer to a Bellevue football team[3] – are not the types of conduct that, if described "to an average member of the community[,] would arouse his resentment against the actor and lead him to exclaim 'Outrageous!'" *Reid v. Pierce County*, 136 Wn.2d 195, 201-02 (1998) (citations omitted).

---

[3] Dkt. # 30 at 9.

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS PLAINTIFFS' COMMON LAW CLAIMS - 7

To state a claim for intentional infliction of emotional distress, the objectionable behavior must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Grimsby v. Samson*, 85 Wn.2d 52, 59 (1975) (citation omitted). That plaintiffs were emotionally distressed by defendants' conduct does not suffice to state a claim where they have failed to allege extreme or outrageous conduct.

The only allegation that could conceivably support an intentional infliction of emotional distress claim relates to the assertion that Mr. Munson made racially demeaning comments to A.A. Although Mr. Munson's statements and the context in which they were made are not recounted, the bare allegation that someone entrusted with the care and coaching of children would belittle one of them on account of race is sufficient to cause a reasonable person to exclaim, "if true, that's outrageous!" Plaintiffs' allegations raise a plausible inference that Mr. Munson could be liable for intentionally inflicting emotional distress.

**C. Negligence**

"To establish an actionable negligence claim, a plaintiff must establish the existence of (1) a duty, owed by the defendant to the plaintiff, to conform to a certain standard of conduct; (2) a breach of that duty; (3) a resulting injury; and (4) proximate cause between the breach and the injury." *Adgar v. Dinsmore*, 26 Wn. App. 2d 866, 875 (2023) (citing *Meyers v. Ferndale Sch. Dist.*, 197 Wn.2d 281, 287 (2021)). "The existence of a duty is a question of law and depends on mixed considerations of logic, common sense, justice,


policy, and precedent." *Snyder v. Med. Serv. Corp. of E. Wash.*, 145 Wn.2d 233, 243 (2001) (internal quotation marks and citations omitted).

Plaintiffs allege that BGCKC and Mr. Munson were negligent in that they failed to address racially demeaning comments made by A.A.'s teammates, removed A.A. and G.A. from their teams, failed to grant transfers to other sports teams in a timely manner, and called the police to have plaintiffs removed from sporting events. Dkt. # 1 at ¶¶ 4.1.h. and 4.1.l. The also allege that Mr. Munson made racially demeaning comments. *Id*. at ¶ 4.1.l.4.

**1. Racially Demeaning Comments**

Defendants appear to concede that they had a duty to address discriminatory or harassing conduct (without conceding that such conduct actually occurred). They point out, however, that BGCKC met with Ms. Nguyen to discuss these issues on August 12, 2022, and that there is no indication that the conduct continued or was repeated after it was brought to the organization's attention. Thus, plaintiffs have failed to plausibly allege that BGCKC's alleged breach resulted in any harm.

Plaintiffs separately accuse Mr. Munson of failing to address the bullying and racially-charged comments leveled at A.A. by his teammates and of making his own racially demeaning comments toward A.A. Defendants fail to address the first accusation and argue that the second should be ignored. Dkt. # 17 at 10. A motion to dismiss cannot succeed by simply ignoring plaintiffs' allegations. While plaintiffs do not allege what Mr. Munson said or the context in which he said it, they clearly allege that he failed to curb

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS PLAINTIFFS' COMMON LAW CLAIMS - 9

bullying and race-based harassment on his team and made racially demeaning comments to A.A. This part of plaintiffs' negligence claim against Mr. Munson may, therefore, proceed.

**2. Removal of A.A. and G.A. From Their Teams**

Plaintiffs affirmatively allege that A.A. removed himself from the BGCKC junior football program. Dkt. # 1 at ¶ 3.3. The claim that BGCKC or Mr. Munson kicked A.A. off the team is unsupported by any facts. With regards to G.A., plaintiffs allege that BGCKC removed him from his team on October 26, 2022, because Ms. Nguyen had violated BGCKC's Code of Conduct. Dkt. # 1 at ¶ 3.13. There is no indication that Mr. Munson had anything to do with the removal and no facts suggesting that BGCKC's enforcement decision was unreasonable or otherwise breached a duty owed to plaintiffs. Where the facts alleged are consistent with both lawful and unlawful conduct, they do not raise a plausible inference of liability.

**3. Transfer**

Plaintiffs allege that Mercer Island Boys Basketballs Booster Club denied A.A. and G.A. transfers to play in other leagues, only to change its mind a week later. Dkt. # 1 at ¶¶ 3.9 and 3.11. The factual basis for this part of their negligence claim against the moving defendants, BGCKC and Mr. Munson, is entirely missing.

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS PLAINTIFFS' COMMON LAW CLAIMS - 10

### 4. Exclusion From Sporting Events

Plaintiffs allege that BGCKC, through various employees, excluded plaintiffs from sporting events "without just cause." Dkt. # 1 at ¶ 4.1.h.4. and 7.[4] BGCKC argues, however, that it had cause to exclude plaintiffs and that it had informed plaintiffs that they were no longer welcome at BGCKC sporting events prior to their appearance at the games, practices, and parties. Whatever the truth of the matter, defendants cannot obtain dismissal of plaintiffs' claims under Rule 12(b)(6) by disputing plaintiffs' allegations.

## D. Negligent Infliction of Emotional Distress

Plaintiffs allege that BGCKC and Mr. Munson negligently inflicted emotional distress by failing to address racially demeaning comments by A.A.'s teammates and by exposing them to unwarranted contact with the police. Dkt. # 1 at ¶¶ 4.1.t.2., 4.1.t.4., 4.1.x.2, and 4.1.x.4. "As with any claim sounding in negligence, where a plaintiff brings suit based on negligent infliction of emotional distress 'we test the plaintiff's negligence claim against the established concepts of duty, breach, proximate cause, and damage or injury.'" *Snyder*, 145 Wn.2d at 243 (quoting *Hunsley v. Giard*, 87 Wn.2d 424, 434 (1976)). For the reasons discussed above, plaintiffs have failed to plausibly allege that BGCKC was negligent in the way it responded to the bullying and racially demeaning comments aimed at A.A. or that Mr. Munson had anything to do with the police's involvement in excluding plaintiffs from sporting events.

---

[4] There are no factual allegations suggesting that Mr. Munson had any role in excluding plaintiffs from BGCKC events.

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS PLAINTIFFS' COMMON LAW CLAIMS - 11

With regards to Mr. Munson's initiation of and response to racially demeaning comments and BGCKC's exclusion of plaintiffs from sporting events "without just cause," plaintiffs are seeking damages for emotional distress in the absence of physical harm. In these circumstances, they must not only show that defendants were negligent, but also that the resulting emotional distress was "(1) within the scope of foreseeable harm of the negligent conduct, (2) a reasonable reaction given the circumstances, and (3) manifest by objective symptomatology." *Bylsma v. Burger King Corp.*, 176 Wn.2d 555, 560 (2013) (citing *Hunsley v. Giard*, 87 Wn.2d 424, 433, 436 (1976)). Defendants make the bare assertion that "[p]laintiffs do not allege objective symptomology," Dkt. # 17 at 12, but they fail to consider the relevant allegations. Objective symptomology exists when a plaintiff's emotional distress is "susceptible to medical diagnosis and proved through medical evidence." *Hegel v. McMahon*, 136 Wn.2d 122, 135 (1998). The Washington Supreme Court has held that the type of emotional damages of which plaintiffs complain, including post traumatic stress disorder, depression, sleep disorders, and anxiety, may be susceptible to diagnosis and can therefore form the basis of a negligent infliction of emotional distress claim. *Id.*

## CONCLUSION

For all of the foregoing reasons, defendants' motion to dismiss plaintiffs' common law claims (Dkt. # 17) is GRANTED in part. Plaintiffs' breach of contract claim against the moving defendants, the intentional infliction of emotional distress claim against BGCKC, most of the intentional infliction of emotional distress claim against Mr. Munson,

and most of the negligent and negligent infliction of emotional distress claims against both BGCKC and Mr. Munson are hereby DISMISSED. The only state law claims that may proceed against the moving defendants are (1) the intentional infliction of emotional distress claim against Mr. Munson related to his alleged racially demeaning comments, (2) the negligence and negligent infliction of emotional distress claims against Mr. Munson arising from his alleged initiation of and failure to respond to bullying and/or racially-charged comments, and (3) the negligence and negligent infliction of emotional distress claims against BGCKC arising from plaintiffs' removal from sporting events.

Dated this 6th day of December, 2023.

Robert S. Lasnik
United States District Judge