UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ELLE NGUYEN, *et al.*,<br><br>          Plaintiffs,<br><br>    v.<br><br>MERCER ISLAND BOYS BASKETBALL BOOSTER CLUB, *et al.*,<br><br>          Defendants. | CASE NO. 2:23-cv-00855-RSL<br><br>ORDER GRANTING THE MIBBBC DEFENDANTS' MOTION TO DISMISS |

This matter comes before the Court on "Defendants Mercer Island Boys Basketball Booster Club, Rebecca Robinson, Karen Friedman, and Kelly Coochise's Motion to Dismiss." Dkt. # 27. Plaintiffs filed this lawsuit on June 6, 2023, alleging that the moving defendants (1) breached various contracts/promises related to participation in a youth basketball program; (2) negligently failed to satisfy their promises and/or wronged plaintiffs; (3) intentionally inflicted emotional distress on plaintiffs Elle Nguyen and A.A.; (4) negligently inflicted emotional distress; and (5) engaged in race-based discrimination in violation of federal and state law. The moving defendants seek dismissal of all of the plaintiffs' claims.

The question for the Court on a motion to dismiss is whether the facts alleged in the complaint sufficiently state a "plausible" ground for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In the context of a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted). The Court's review is generally limited to the contents of the complaint. *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). "We are not, however, required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). ). A district court may also "consider certain materials — documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice — without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

> To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." []*Twombly*, 550 U.S. [at 570]. A plausible claim includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *U.S. v. Corinthian Colls.*, 655 F.3d 984, 991 (9th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Under the pleading standards of Rule 8(a)(2), a party must make a "short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2). . . . A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Thus, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

*Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1144–45 (9th Cir. 2021). If the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim, dismissal is appropriate. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

Having reviewed the Complaint, the memoranda submitted by the parties,[1] and Exhibits B, C, and D to the Declaration of Rebecca Robinson,[2] and construing the allegations in the light most favorable to plaintiffs, the Court finds as follows:

## BACKGROUND

In September 2022, plaintiffs G.A., age 12, and A.A., age 11, participated in the 5th and 6th grade Mercer Island Boys Basketball Booster Club ("MIBBBC") tryouts for spots on their 2022-2023 rosters. Dkt. # 1 at ¶ 3.5. Both boys were selected to play on the Eastside Travel League teams representing Mercer Island. *Id.* The day of A.A.'s tryout, the

---

[1] Plaintiffs filed three versions of their opposition memoranda. The Court has considered the last one (Dkt. # 28), which includes the required word-limit certification.

[2] Plaintiffs' motion to strike the Declaration of Rebecca Robinson (Dkt. # 20) is procedurally improper and could be denied on that ground. *See* LCR 7(g) (requests to strike "shall not be presented in a separate motion to strike, but shall instead be included in the responsive brief, and will be considered with the underlying motion"). Nevertheless, the Court must determine what extraneous matters may be considered in the context of this motion to dismiss. It is clear that the social media post attached as Exhibit A to the declaration was not attached to the complaint, was not extensively referred to in the complaint, does not form the basis of any of plaintiff's claims, and is not subject to judicial notice. *Ritchie*, 342 F.3d at 908. In contrast, plaintiffs' breach of contract claim is based on the documents attached as Exhibits B, C, and D to the declaration: those documents have therefore been considered.

MIBBBC board voted to remove A.A. from the Eastside Travel Team that selected him and instead demote him to a lower-level "Cascade" team. *Id*. at ¶¶ 3.6-3.7. MIBBBC's president, defendant Rebecca Robinson, left three voicemail messages for A.A.'s mother, plaintiff Elle Nguyen, stating that she needed to speak with Ms. Nguyen immediately. *Id*. at ¶ 4.1.m.3. Ms. Nguyen did not call her back. *Id*. The next morning, Ms. Robinson spoke with Ms. Nguyen and informed her that A.A. was placed on the Cascade team because Ms. Nguyen had made a disparaging social media post about A.A.'s coach in another league. *Id*. A.A. overheard this phone call and was traumatized by the fact that he was being punished for something he did not do. *Id*. When Ms. Nguyen offered to refrain from attending A.A.'s games if he were permitted to remain on the Eastside Travel League team that had selected him, the MIBBBC board declined the offer. *Id*.

The coach that had selected A.A. for the Eastside Travel League team attempted to get him reinstated, but to no avail. *Id*. at ¶ 3.8. When the coach subsequently permitted A.A. to participate in a team practice, MIBBBC board member, defendant Kelly Coochise, had A.A. removed from the building. *Id*. at ¶ 3.17. On September 29, 2022, the MIBBBC board declined to allow A.A. and G.A. to transfer to the Bellevue Eastside Travel League basketball team despite receiving transfer forms from the Bellevue 5th and 6th grade coaches. *Id*. at ¶ 3.9.[3] A week later, MIBBBC agreed to allow the transfers, but tryouts for

---

[3] Although not specifically alleged in the Complaint, the parties agree that, at some point, both A.A. and G.A. were released from the MIBBBC program.

ORDER GRANTING THE MIBBBC DEFENDANTS'
MOTION TO DISMISS - 4

the Bellevue team were scheduled that same day and A.A. and G.A. could not attend. *Id*. at ¶ 3.11. Ms. Nguyen signed MIBBBC's Code of Conduct on October 1, 2022. *Id*. at ¶ 3.10.

In March 2023, an Eastside Travel League coach told Ms. Nguyen that he had been told by MIBBBC director Karen Friedman that A.A. and G.A. had been removed from the team "because [Ms. Nguyen] did not donate enough in the 2021-2022 season in addition to the social media post." *Id*. at ¶ 3.21.

As a result of defendants' actions, A.A. has experienced stress and general malaise for which he sought medical attention. *Id.* at ¶ 3.19. He has also lost weight. *Id.* at ¶ 3.20. All three plaintiffs have experienced severe emotional distress and suicidal ideation as a result of A.A.'s and G.A.'s removal from MIBBBC. Also as a result of defendants' actions, A.A. and G.A. have missed school on multiple occasions and are seeing a therapist. *Id.* at ¶ 3.22.

## Discussion

**A. Breach of Contract**

    **1. MIBBBC**

Plaintiffs allege that, on September 23, 2022, MIBBBC told those who had registered for tryouts that a "player's participation in tryouts is treated as a commitment to the team if selected by the coach." *Id*. at ¶ 4.1.a.3. Plaintiffs allege that this was a promise that, if a coach selected an athlete for his or her team, the athlete would be permitted to play for that team. The September 23rd email did nothing more than offer plaintiffs an opportunity to try out for the MIBBBC teams and specify the procedure and expectations

that governed participation. One of those expectations was that, if an athlete were selected for one of MIBBBC's teams, he would complete the registration process. Parents were specifically informed that if it were not their intention to register a player if he were selected, they should withdraw from tryouts. Dkt. # 14 at 7. The provision on which plaintiffs rely did not guarantee placement on a team, much less on a particular team, nor did it impose any contractual obligations on MIBBBC.

Plaintiffs assert that A.A.'s demotion from the Eastside Travel League team that selected him to the Cascade team violated the MIBBBC's Code of Conduct. *Id*. at ¶ 4.1.a.6. The Code of Conduct Ms. Nguyen signed on October 1, 2022, contains a series of pledges a parent is required to make before his or her child will be permitted to participate in MIBBBC's program. Dkt. # 14 at 10-11. Violations of the Code of Conduct make a parent and/or her child subject to disciplinary action at the discretion of MIBBBC, but the document imposes no obligations on MIBBBC. In the absence of any contractual duty, the Code of Conduct cannot serve as the basis for a breach of contract claim.

When MIBBBC notified Ms. Nguyen in writing that her sons were being removed from their basketball teams, the letter promised that "MIBBBC will provide either player with whatever form or waiver necessary, if requested, for them to find a better fit." *Id*. at ¶ 4.1.a.7. The letter is dated October 17, 2022. Plaintiffs' claim is that MIBBBC breached that promise, but there are no supporting allegations. Plaintiffs specifically allege that, despite an initial refusal at the end of September, MIBBBC agreed to transfer the players a week later. This agreement was memorialized in the October 17th letter. There is no

indication that plaintiffs requested that a form or waiver be provided after MIBBBC had promised to provide the necessary documentation. To the extent this promise is enforceable, plaintiffs have failed to plausibly allege a breach.

**2. Individual Defendants**

To establish a breach of contract claim, plaintiffs must show that there was an agreement between the parties, *i.e.*, a "meeting of the minds" on the essential terms of the agreement. *Sea–Van Investments Assoc. v. Hamilton*, 125 Wn.2d 120, 125–26 (1994). Plaintiffs argue only that the individual defendants, as members of MIBBBC's decision-making body, are bound by the entity's contracts. No support is offered for the proposition that an officer or board member of an organization can be held liable for the contractual obligations of the entity. Plaintiffs do not cite any relevant case law, nor do they allege facts that might support the imposition of liability. There is no indication that any of the individual defendants signed an agreement with plaintiffs or otherwise intended to be personally bound by representations or promises MIBBBC made. Plaintiffs do not allege an offer, acceptance, or a meeting of the minds with the individual defendants. There are no facts from which one could plausibly infer that the individual defendants are the alter ego of the organization. The contract claims against the individual defendants therefore fail for lack of an agreement.

**B. Intentional Infliction of Emotional Distress**

In Washington, "[t]he tort of outrage requires the proof of three elements: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional

ORDER GRANTING THE MIBBBC DEFENDANTS'
MOTION TO DISMISS - 7

distress, and (3) actual result to plaintiff of severe emotional distress." *Kloepfel v. Bokor*, 149 Wn.2d 192, 195 (2003) (citations omitted). The wrongs at issue here – overriding a coach's choice regarding the selection of a player for a particular team, removing a non-participant from a team practice, sanctioning participants, and failing to immediately release a participant to play for another team in the same league[4] – are not the types of conduct that, if described "to an average member of the community[,] would arouse his resentment against the actor and lead him to exclaim 'Outrageous!'" *Reid v. Pierce County*, 136 Wn.2d 195, 201-02 (1998) (citations omitted). The objectionable behavior described in the Complaint is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Grimsby v. Samson*, 85 Wn.2d 52, 59 (1975) (citation omitted). That plaintiffs have suffered emotional distressed does not suffice to state a claim of outrage.

**C. Negligence and Negligent Infliction of Emotional Distress**

"To establish an actionable negligence claim, a plaintiff must establish the existence of (1) a duty, owed by the defendant to the plaintiff, to conform to a certain standard of conduct; (2) a breach of that duty; (3) a resulting injury; and (4) proximate cause between the breach and the injury." *Adgar v. Dinsmore*, 26 Wn. App. 2d 866, 875 (2023) (citing *Meyers v. Ferndale Sch. Dist.*, 197 Wn.2d 281, 287 (2021)). "The existence of a duty is a

---

[4] In their opposition memorandum, plaintiffs list a number of events and interactions involving Mercer Island Boys and Girls Club of King County and defendant Marc Munson. Plaintiffs offer no theory pursuant to which the moving defendants could be held liable for emotional distress caused by third parties.

ORDER GRANTING THE MIBBBC DEFENDANTS'
MOTION TO DISMISS - 8

question of law and depends on mixed considerations of logic, common sense, justice, policy, and precedent." *Snyder v. Med. Serv. Corp. of E. Wash.*, 145 Wn.2d 233, 243 (2001) (internal quotation marks and citations omitted). Where the injury for which plaintiffs are seeking damages is emotional in nature and not accompanied by physical harm, they must not only show that defendants were negligent, but also that the resulting emotional distress was "(1) within the scope of foreseeable harm of the negligent conduct, (2) a reasonable reaction given the circumstances, and (3) manifest by objective symptomatology." *Bylsma v. Burger King Corp.*, 176 Wn.2d 555, 560 (2013) (citing *Hunsley v. Giard*, 87 Wn.2d 424, 433, 436 (1976)).

In the complaint, the negligence claim is set forth immediately after the contract claim. With regards to the existence of a duty, plaintiffs allege only that defendants "breached said duty," apparently referring to the contractual duties set forth in the preceding paragraphs. Dkt. # 1 at ¶¶ 4.1.g.2., 4.1.i.2., 4.1.j.2., and 4.1.k.2. A negligence claim that rests solely on a breach of a contractual duty is generally barred by the independent duty doctrine. *See, e.g., Donatelli v. D.R. Strong Consulting Engineers, Inc.*, 179 Wn.2d 84, 95–96 (2013). "Without a duty outside of the contract, [plaintiffs] cannot maintain a claim in negligence." *Busey v. Wells Fargo Bank, N.A.*, No. C19-5880 RJB-BAT, 2020 WL 5891907, at *4 (W.D. Wash. Oct. 5, 2020)(citing *Eastwood v. Horse Harbor Found., Inc.*, 170 Wn.2d 380, 389 (2010)).

Plaintiffs identify a number of other "breaches" that involved (1) the unfair removal of A.A. and G.A. from their basketball teams without good cause; (2) refusing to accept

Ms. Nguyen's offer to stay away from games if her children were allowed to play; (3) refusing to allow A.A. and G.A. to transfer to the Bellevue Eastgate Travel League team in a timely manner; and (4) removing A.A. from a practice that the coach had allowed him to attend.[5] But plaintiffs offer no arguments based in logic, common sense, justice, policy, or precedent to support the imposition of a duty owed by any one of these defendants to place or retain a child on a team, to accept a parent's offer to resolve a dispute, to grant transfers upon request, or to allow a non-participant to participate in a team event.[6] Absent some standard of care against which defendants' conduct can be measured, there is no duty that could be breached.

**D. Title VI Discrimination Claim**

Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, prohibits discrimination on the basis of race by any program or activity that receives federal financial assistance. Discriminatory intent is required to obtain compensatory relief, but it is not required for declaratory and injunctive relief. *Guardians Ass'n v. Civil Serv. Comm'n of City of New York*, 463 U.S. 582, 584 (1983).

---

[5] The fourth "breach," as written here, is consistent with the facts alleged. Dkt. # 1 at ¶ 3.17. In the statement of legal claims, plaintiffs assert that G.A. was removed from practice when A.A. had been invited to attend. The Court believes that is a misstatement of the facts, but if it were accurate, plaintiffs fail to explain how an invitation to A.A. would give rise to a duty owing to G.A.

[6] In their opposition, plaintiffs suggest that defendants may have owed fiduciary duties to unnamed parties. Dkt. # 28 at 15. No fiduciary obligations have been alleged, however.

ORDER GRANTING THE MIBBBC DEFENDANTS'
MOTION TO DISMISS - 10

### 1. Individual Defendants

Plaintiffs do not allege that the individual defendants receive federal financial assistance. When defendants pointed out that glaring omission in their motion, plaintiffs responded with a section heading that reads:

> Plaintiffs Reasonably Impute Liability on Individual Defendants' Principal, Mercer Island Boys Basketball Booster Club (hereinafter 'MIBBBC'), With Respect to its Title VI Discrimination Claim and Will Therefore Amend Their Complaint Promptly Upon Filing the Instant Response to MIBBBC's Motion to Dismiss to Reflect This Modified Claim

Dkt. # 28 at 20. No argument supports this heading, it does nothing to show that the individual defendants could be held liable under Title VI, and plaintiffs have not attempted to amend their complaint. The Title VI claim against the individual defendants fails as a matter of law.

### 2. MIBBBC

Plaintiffs do not allege that MIBBBC receives federal financial assistance. The bare allegation that MIBBBC's conduct "violated Title VI of the Civil Rights Act of 1964" (Dkt. # 1 at ¶ 4.1.y.2.) is entirely conclusory and does not raise a plausible inference of liability. Plaintiffs postulate that MIBBBC might be a state actor, but that is not a substitute for an allegation regarding federal funding assistance. The Title VI claim against MIBBBC has not been adequately pled.

## E. RCW 49.60.030 Claim

Washington law protects, among other things, "[t]he right to the full enjoyment of any of the accommodations, advantages, facilities, or privileges of any place of public

resort, accommodation, assemblage, or amusement," without discrimination based on race. RCW 49.60.030(1)(b).

> To make out a prima facie case under the WLAD for discrimination in the public accommodations context, the plaintiff must establish four elements: (1) that the plaintiff is a member of a protected class, RCW 49.60.030(1); (2) that the defendant is a place of public accommodation, RCW 49.60.215; (3) that the defendant discriminated against the plaintiff, whether directly or indirectly, *id*.; and (4) that the discrimination occurred "because of" the plaintiff's status or, in other words, that the protected status was a substantial factor causing the discrimination, RCW 49.60.030.

*State v. Arlene's Flowers, Inc.*, 193 Wn.2d 469, 501–02 (2019). Plaintiffs do not allege that the MIBBBC defendants took or omitted to take any action because of plaintiffs' race. Where motivations are ascribed to the moving defendants, they have nothing to do with race. Plaintiffs specifically allege that A.A. was placed on the lower-level Cascade team because of Ms. Nguyen's social media post and that both boys were removed from the program because Ms. Nguyen did not donate enough during the 2021-2022 season and because of the social media post. In the absence of an allegation of discrimination because of race, plaintiffs have failed to raise a plausible inference of liability under RCW 49.60.030.

In opposition to the motion to dismiss, plaintiffs assert that they were the only family of color on the teams involved, that the MIBBBC defendants took actions which caused plaintiffs harm, and that Ms. Nguyen's social media post was not a legitimate reason for these actions. Dkt. # 28 at 21-22. In essence, plaintiffs are disavowing the allegations of intent and motivation in the complaint in order to assert pretext. Plaintiffs

ORDER GRANTING THE MIBBBC DEFENDANTS'
MOTION TO DISMISS - 12

may not, however, successfully defend against a motion to dismiss by asserting a new (and in some essential ways, contrary) version of the facts in their opposition memorandum.

## Conclusion

For all of the foregoing reasons, the MIBBBC defendants' motion to dismiss (Dkt. # 27) is GRANTED. Although all of plaintiffs' claims against the MIBBBC defendants are hereby dismissed, this litigation continues against defendants Boys and Girls Club of King County and Marc Munson. In this context, leave to amend will not be blindly granted. If plaintiffs believe they can, consistent with their Rule 11 obligations, amend their complaint to remedy the deficiencies identified above, they may file a motion to amend and attach a proposed pleading for the Court's consideration.

Plaintiffs' motion to strike (Dkt. # 20) is GRANTED in part and DENIED in part.

Dated this 6th day of December, 2023.

                                        Robert S. Lasnik
                                        United States District Judge