UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| ELLE NGUYEN, *et al.*,<br><br>             Plaintiff,<br>    v.<br><br>MERCER ISLAND BOYS & GIRLS CLUB OF KING COUNTY, *et al.*,<br><br>             Defendants. | CASE NO. 2:23-cv-00855-RSL<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on "Defendant Boys and Girls Club of King County and Marc Munson's Motion for Summary Judgment." Dkt. 148. Plaintiffs allege that:

Defendants Mercer Island Boys & Girls Club of King County ("BGCKC") and Marc Munson were negligent and negligently inflicted emotional distress by failing to respond to bullying and/or racially-charged comments aimed at plaintiff A.A.;

BGCKC was negligent and negligently inflicted emotional distress by removing plaintiffs from sporting events;

BGCKC negligently supervised and retained Mr. Munson;

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 1

BGCKC racially discriminated against plaintiffs in violation of state and federal law; and

BGCKC and Mr. Munson defamed plaintiffs.

*See* Dkt. 115 at 10-11.[1] Defendants seek summary dismissal of all of plaintiffs' claims.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Although the Court must reserve for the trier of fact genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Factual disputes whose

---

[1] As defendants point out in reply, there is no retaliation claim in this case.

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 2

resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties[2] and taking the evidence in the light most favorable to plaintiffs, the Court finds as follows:

**A. Negligence and Negligent Infliction of Emotional Distress**

In order to succeed on a negligence claim, plaintiffs must establish the existence of "(1) a duty, owed by the defendant to the plaintiff, to conform to a certain standard of conduct; (2) a breach of that duty; (3) a resulting injury; and (4) proximate cause between the breach and the injury." *Adgar v. Dinsmore*, 26 Wn. App. 2d 866, 875 (2023) (citing *Meyers v. Ferndale Sch. Dist.*, 197 Wn.2d 281, 287 (2021)). Where, as here, the resulting injury is emotional distress without physical harm, the emotional distress must be

---

[2] This matter can be decided on the papers submitted, including Dkt. 129. Defendants' request for oral argument is DENIED, as is their request to ignore plaintiffs' efforts to incorporate Dkt. 129 by reference.

Plaintiffs' objections to Exhibit A and B to the Declaration of Matthew K.T. Ishihara (Dkt. 159-1 and 159-2) are sustained. There is no indication that defense counsel has personal knowledge of the creation or maintenance of these documents, and they do not satisfy the requirements for authentication-by-production by a party opponent. *See Orr v. Bank of Am.*, 285 F.3d 764, 777-78 (9th Cir. 2002); *Barefield v. Bd. of Trustees*, 500 F. Supp.2d 1244, 1257 (E.D. Cal. 2007). Alyssa Young's notes from the October 14, 2022, meeting are attached to her declaration, Dkt. 154-1, and have been considered.

The Court has considered plaintiffs' first sur-reply (Dkt. 170) and defendants' motion to strike that sur-reply (Dkt. 172). There is no possible justification for the parties' subsequent filings, however: Dkt. 175, 176, 178, 182, 184, and 187 have not been considered.

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 3

"(1) within the scope of foreseeable harm of the negligent conduct, (2) a reasonable reaction given the circumstances, and (3) manifested by objective symptomatology." *Bylsma v. Burger King Corp.*, 176 Wn.2d 555, 560 (2013). "These requirements were developed to address past concerns that feigned claims of emotional distress would lead to 'intolerable and interminable litigation.'" *Bylsma*, 176 Wn.2d at 560-61 (quoting *Corcoran v. Postal Tel.-Cable Co.*, 80 Wn. 570, 580 (1914)). The third requirement for objective symptomology requires that a plaintiff's emotional distress be susceptible to medical diagnosis and proven through medical evidence regarding both "the severity of the distress, and the causal link between the [negligent behavior] and the subsequent emotional reaction." *Hegel v. McMahon*, 136 Wn.2d 122, 135 (1998); *Hill v. Washington Interscholastic Activities Ass'n*, 17 Wn. App. 2d 1043 (2021); *Repin v. State*, 198 Wn. App. 243, 264 (2017).

In response to a motion for summary judgment, plaintiffs may not rest on mere allegations or assertions. Rather, plaintiffs must come forward with evidence sufficient to give rise to a triable issue of fact regarding each of the essential elements of their claims. Because plaintiffs' negligence-based claims do not involve physical harm, they must provide sufficient evidence that the jury could conclude that their emotional distress manifested itself through objective symptomatology, as defined above. Plaintiffs have not presented any medical evidence at all, much less medical evidence establishing the severity of the distress caused by (i) Mr. Munson's alleged failure to address bullying and

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 4

race-based harassment in September/October 2021,[3] (ii) BGCKC's summoning of law enforcement to remove plaintiffs from various sporting events, and/or (iii) BGCKC's supervision or retention of Mr. Munson as a volunteer coach. In the absence of evidence sufficient to support a finding of objective symptomatology resulting from these acts, plaintiffs' negligence-based claims fail as a matter of law.

### B. Racial Discrimination

Plaintiffs allege that BGCKC discriminated against them on the basis of race in violation of Title VI of the Civil Rights Act of 1964 and the Washington Law Against Discrimination ("WLAD"). In particular, plaintiffs argue that BGCKC acted with discriminatory intent when it refused to allow A.A. to play quarterback during the 2021 and 2022 seasons, prevented G.A. and A.A. from accessing BGCKC bathrooms and water fountains in the spring of 2022, excluded G.A. and the rest of the family from the organization's programming in the fall of 2022 based on trumped up violations of the Parent Code of Conduct, insisted on language for transfer requests that omitted any reference to race, and called the police to have plaintiffs removed from sporting events.

---

[3] Taking the evidence in the light most favorable to plaintiffs, A.A. informed his coach, Mr. Munson, that one of his teammates was making racial comments about him and that two other boys kept taking his football. Dkt. # 159-4 at 3. According to A.A., this conversation happened fairly early in the 2021 football season. *Id.* Mr. Munson was unhelpful, asking A.A. what he had done to provoke the other boys rather than addressing the behaviors. A.A.'s mother, plaintiff Elle Nguyen, contacted the boys' parents, and the comments and ball stealing stopped by mid-October 2021. Mr. Munson disputes this narrative, flatly denying that A.A. ever told him that he was being bullied or experiencing race-based harassment. Dkt. 156 at ¶ 12 and 159-6 at 6. Defendants invite the Court to ignore A.A.'s testimony on the subject, insisting that A.A. was incorrect and that the Court should accept Mr. Munson's testimony instead. Such credibility determinations cannot be made in the context of a motion for summary judgment.

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 5

The Court will assume for purposes of this motion that plaintiffs have raised a *prima facie* case of race discrimination: plaintiffs are Vietnamese American, they applied for and were qualified to participate in BGCKC programming, and they were subsequently excluded from those programs and sporting venues. BGCKC has provided evidence of legitimate, non-discriminatory explanations for all of the actions and decisions listed above, however. The question, then, is whether plaintiffs have come forward with sufficient evidence to show that the stated explanations were pretext and/or that discriminatory animus was, in fact, a motivating factor. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973).

With regards to the quarterback decision, A.A. was not chosen because the football coach believed others had better chances of success in the quarterback position. There is no evidence of race-based discrimination: even Ms. Nguyen acknowledges that Mr. Munson's perceived bias was simply in favor of his son, seemingly unrelated to race. Dkt. 159-3 at 55. Because nepotism was a real concern (Mr. Munson had chosen his son as starting quarterback in 2021), BGCKC invited outside coaches to observe and participate in the 2022 tryouts. The results were the same. Plaintiffs have not shown that A.A.'s race had anything to do with the quarterback selection process in either 2021 or 2022.

With regards to the use of BGCKC's facilities in the spring of 2022, BGCKC has shown that the facility was not open to the public when A.A., G.A., and a friend showed up to use the bathroom and get a drink of water. According to A.A., the boys were practicing basketball at Northwood Elementary School in anticipation of an upcoming

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 6

tournament. Because they were on teams run by BGCKC, they thought they could go into the nearby BGCKC facility when they needed water and a bathroom. They were not, however, enrolled in the childcare programming that was then going on, and staff would not let the boys in. There is no indication that the friend, Franco Giller, is a member of a protected class or that race played any part in the decision to exclude them from the BGCKC facility when they were not participating in the programs that were in progress.

BGCKC asserts that it excluded G.A. and the rest of the family from the organization's programming in the fall of 2022 because plaintiff Elle Nguyen had, in BGCKC's estimation, violated a provision of the Parent Code of Conduct preventing "unsportsmanlike conduct," which includes physically/verbally harassing or taunting players or coaches. Dkt. 159-8 at 2. In August 2022, Ms. Nguyen posted a video of the team's quarterback throwing an interception with the caption:

> That's a QB throw [?]😲 then got intercepted: bad coaching Mark. haha!😝

Dkt. 156-5. She was warned that BGCKC viewed this video/comment as a violation of four separate provisions of the Parent Code of Conduct, including the one described above. Dkt. 155-2 at 2. She subsequently commented on the post as follows:

> Hey Tracy [Munson], since you're jockin' my FB, let me be crystal clear. I got you confused w/ another gal when I came over thinking it was her I was chatting w/but realize it was the coach's wife, hahaha! Before you spew your asinine attitude w/me KNOW there's two sides to every story. Perhaps you

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 7

need to check yourself before you wreck yourself what your hubby TEXT about my son. You don't want to step up to me. 😜

Dkt. 156-6 at 2. She also addressed a text message to Mr. Munson and five other people on October 17, 2022, that read:

> Marc Munson: CEASE & DESIST spreading juvenile rumors in the community defaming my character that I have attended Youth football games by myself w/out my children intimidating and/or harassing other parents, per B&G Club corporate on 10/14/2022. This is Slander at its core. I am sorry to burst your bubble but my life does not revolve around your family. What are you in high school here? You have something to say then MAN UP address me face-to-face as adults and not hide behind a keyboard Thank you for the false narrative unrelated to basketball you pushed your agenda to have MIBBBC join in your willful intent to harm Tryout player 525 from playing basketball on a team "selected" by coach Mason . . . remember the kid that you put down by saying he's not even close to being a good QB, and too slow to even tryout for tight end . . . so you claim, knocking his self esteem  We don't have to like one another but you must stop and always remember "it is all about the kids"

Dkt. 156-7.

On October 26, 2022, BGCKC emailed Ms. Nguyen to let her know that the October 17th text string was considered harassing, inappropriate, misleading, and a further violation of the Parent Code of Conduct. Dkt. 159-8 at 7. The email also quotes a Facebook "Story" Ms. Nguyen had posted in September, but Ms. Nguyen denied that the "Story" had anything to do with Mr. Munson. Dkt. 159-8 at 6-7. BGCKC's final decision to remove the family from all BGCKC programming was based on the fact that the October 17th text message harassed a coach after Ms. Nguyen had been warned against such behavior. Dkt. 159-8 at 2. Ms. Nguyen variously asserts that her comments and

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 8

communications were justified by Mr. Munson's critique of her son's football abilities and her supposition regarding what he was saying about her in the community, that the comments were constitutionally protected speech, and/or that there is nothing wrong with the comments. That Ms. Nguyen believes her comments were not that bad or that she was somehow privileged to make them[4] does not raise an inference that the stated justifications for BGCKC's exclusion of the family were pretextual or that plaintiffs' race, rather than Ms. Nguyen's conduct, motivated BGCKC's decision.

To raise such an inference, plaintiffs argue that BGCKC treated Ms. Nguyen's violation of the Parent Code of Conduct differently than that of five white families who also allegedly violated the Code. An inference of race discrimination can certainly arise if similarly situated individuals are treated differently, with the primary distinguishing factor being race. *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1032 (9th Cir. 2006) (fact that plaintiff was the only African-American member of the employer's management team and the only executive demoted helps establish both the *prima facie* case of discrimination and the ultimate fact of discrimination). Plaintiffs have not, however, shown that they were similarly situated with the five white families. Only Ms. Nguyen posted disparaging things about a youth player and the coach. Only Ms. Nguyen contacted the coach and his wife to harangue, if not threaten, them over perceived wrongs.

---

[4] The First Amendment to the United States Constitution "provides robust protection for free speech. But it has an important limitation: It 'prohibits only governmental abridgment of speech' and 'does not prohibit private abridgment of speech.'" *Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 753 (9th Cir. 2024), *cert. denied*, No. 24-732, 2025 WL 1787729 (U.S. June 30, 2025) (quoting *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 808, (2019)).

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 9

Nor have plaintiffs shown that the transgression of which they accuse the other five families (*i.e.*, lying on their registration materials to evade the league's geographic restrictions) violated the Parent Code of Conduct. Where the alleged comparators are not actually comparable, no inference of a race-based decision arises.

With regards to BGCKC's insistence that plaintiffs delete accusations of race-based discrimination from a "Player Transfer Request" form, it is not clear how that raises an inference of discrimination. At the time, plaintiffs had told BGCKC that A.A. had been the target of race-based comments from a teammate in 2021, but that the problem had been resolved. BGCKC had taken Ms. Nguyen's complaints regarding the 2021 tryouts under consideration and invited third parties to participate in the 2022 quarterback selection process in order to avoid the appearance of nepotism. When plaintiffs asked BGCKC to sign a form stating "Player has felt segregated, unsafe and unsupportive from incidents commenced in 2021 season that eventually carried over in July and August 2022" and that he "feels he was not selected as back up QB because he is Asian," the statements were inconsistent with the facts as BGCKC knew them and appeared to be unfounded. Insisting that the transfer request form accurately describe the reasons for the request before BGCKC would append its signature does not suggest that the stated justifications for removing G.A. and his family from BGCKC programming was pretextual.

Finally, plaintiffs allege that BGCKC staff prevented G.A. from observing his former team's practice and called the police to have plaintiffs removed from various sporting events. There is no indication that these efforts were in any way motivated by

plaintiffs' race as opposed to the fact that they had been excluded from BGCKC's programs.[5]

### C. Defamation

Plaintiffs' defamation claim is based on Ms. Nguyen's perception that parents in the community "don't want to be associated with" her. Dkt. 159-3 at 51. Ms. Nguyen does not know what BGCKC might have said to make the Mercer Island community not like her. *Id*. The only thing she knows is that a BGCKC representative told Ms. Nguyen that BGCKC had received reports of Ms. Nguyen attending a football game by herself and harassing staff/parents and of "an interaction with another parent that left them feeling unsafe due to [Ms. Nguyen's] behavior and subsequent post on Facebook." Dkt. 159-3 at 20 and 155-2 at 2. Ms. Nguyen surmises that the reporting parent or parents were the Munsons. She then further surmises that BGCKC and/or Mr. Munson told others of these statements, and that this publication is the reason her standing in the community has been adversely impacted. Plaintiffs have no declarations from any third party who heard BGCKC or Mr. Munson make these or any similar statements. Without admissible evidence that the defendant published a false statement, the defamation claim fails as a matter of law.

---

[5] To the extent plaintiff is arguing that BGCKC discriminated against A.A. when it failed to take action to stop a teammate from making race-based comments in the fall of 2021, there is no indication that BGCKC was aware of those comments nor is there sufficient information regarding the behavior itself for a jury to find that it was so severe, pervasive, or objectively offensive as to deny A.A. the benefits of BGCKC's programming. *See, e.g.*, *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001); *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 652 (1999).

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 11

For all of the foregoing reasons, defendants' motion for summary judgment is GRANTED. The Clerk of Court is directed to enter judgment in favor of defendants and against plaintiffs.

Dated this 29th day of August, 2025.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge